NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TAMARA FONG, *as the Administratix and Administratix Ad Prosequendum of the ESTATE OF CARL DORSEY III, and Guardian Ad Litem to Minor Children G.O.D., J.D.D., and J.H.D.*, | Civil Action No. 22-7243 (SDW) (MAH) |
| Plaintiff, | OPINION |
| v. | December 10, 2024 |
| CITY OF NEWARK, et al., | |
| Defendants. | |

**WIGENTON**, District Judge.

Before this Court are Defendants the City of Newark (the "City"), the Newark Police Department ("NPD"), and Detective Rod Simpkins' Motions to Dismiss (D.E. 132 & 133 ("Motions")) Plaintiff Tamara Fong's[1] ("Plaintiff") Amended Complaint (D.E. 116) pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Jurisdiction is proper pursuant to 28 U.S.C. § 1331 and § 1367(a). Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Rule 78 and Local Civil Rule 78.1. For the reasons stated herein, the Motions are **GRANTED in part and DENIED in part.**

I.         FACTUAL AND PROCEDURAL BACKGROUND

---

[1] Plaintiff Tamara Fong is also mother to three of Carl Dorsey III's children.

1

The Court refers to its prior opinion dated December 28, 2023 (D.E. 79 ("Op.")) for a fuller recitation of the broader factual background. The underlying factual scenario involves the shooting and death of Carl Dorsey III, a thirty-nine-year-old Black man, by Defendant Simpkins on January 1, 2021. (Op. at 2.)

On March 29, 2024, Plaintiff filed an Amended Complaint alleging unconstitutional search and seizure (Counts II and III), failure to administer medical aid (Count IV), municipal liability (Count V), and failure to train and/or supervise (Count VIII) under 42 U.S.C. § 1983; excessive use of force in violation of § 1983 and the New Jersey Civil Rights Act ("NJCRA"), N.J. Stat. Ann. § 10:6-2 (Counts I and VI); violation of Dorsey's due process rights under the New Jersey Constitution (Count VII); and common law tort claims (Counts IX to XV). (D.E. 116 ("Amended Compl.") at 21–38.)

Defendants[2] moved to dismiss Plaintiff's Amended Complaint in May 2024. (D.E. 132 & 133.) The parties timely completed briefing. (D.E. 132–33, 136–37, 140, 143.)

II.     **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). The pleading should "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

When deciding a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief may be granted, federal courts "must accept all factual allegations in the complaint as

---

[2] The City's cover page to their Moving Brief maintains that the NPD was "improperly pled as an entity separate and apart from the City." (D.E. 132 at 3.) This Court agrees. *See* N.J. Stat. Ann. § 40A:14-118 (stating that New Jersey police departments are "an executive and enforcement function of municipal government); *Padilla v. Twp. of Cherry Hill*, 110 Fed. App'x 272, 278 (3d Cir. Oct. 5, 2004); *Alsaidi v. City of Paterson*, No. 22-6697, 2024 WL 4053085, at *4 (D.N.J. Sept. 5, 2024) (same). Hereinafter, this Court's references to the City encompass both the City and the NPD unless otherwise stated.

2

true, construe the complaint in the light favorable to the plaintiff," and determine "whether [the] plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010).  The analysis involves a two-step approach. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).  First, the Court parses between the factual and legal elements of a claim, treating "all of the complaint's well-pleaded facts as true," but disregarding any legal conclusions. *Id.*; *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Second, the Court considers "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

When a plaintiff pleads factual content that enables the Court to draw "the reasonable inference that the defendant is liable for the misconduct alleged," a claim has facial plausibility. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678). Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[] that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id.*  The Court considers "only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Belichick*, 605 F.3d at 230 (citation omitted).

### III.   DISCUSSION

3

Plaintiff's Amended Complaint asserts common law tort claims subject to the New Jersey Tort Claims Act ("NJTCA"), N.J. Stat. Ann. § 59:1-1 *et seq.*; a due process violation claim under the New Jersey State Constitution[3]; and a number of claims under § 1983.[4]

### A. Qualified Immunity (Counts I to IV and VI)

Defendant Simpkins puts forth that the claims asserted against him alleging violations of § 1983 and its state equivalent should be dismissed because he is entitled to qualified immunity.[5] Defendant Simpkins repeatedly maintains that he acted in an objectively reasonable manner—particularly given the brevity of the encounter between him and Mr. Dorsey—and reasonably believed that Mr. Dorsey was armed and dangerous. (D.E. 133-4 ("Simpkins Mov. Br.") at 23–25, 31–32, 35, 37, 40, 43–45.) For the reasons outlined in this Court's prior decision, this Court finds that there are material factual disputes which preclude it from finding Defendant Simpkins is entitled to qualified immunity. (Op. at 12 ("The Third Circuit has made clear that where material factual disputes are relevant to determining whether an officer is entitled to qualified immunity, it is improper for courts to grant qualified immunity at the pleading stage.") (citing *Monteiro v. City of Elizabeth*, 436 F.3d 397, 405 (3d Cir. 2006)).) Counts I to IV and VI against Defendant Simpkins may proceed.

### B. § 1983 Claims (Counts V and VIII)

---

[3] Plaintiff concedes to the dismissal of her state constitution due process claim (Count VII). (D.E. 137 at 12.) Accordingly, this Court dismisses Count VII of the Amended Complaint with prejudice.

[4] Section 1983 provides a means to redress violations of federal law committed by state actors. *See Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). For a § 1983 cause of action, a plaintiff must demonstrate that (1) "the conduct complained of was committed by a person acting under color of state law" and (2) "the conduct deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States." *Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011); *see* 42 U.S.C. § 1983.

[5] The NJCRA is the state law analogue to § 1983. *Perez v. Zagami, LLC*, 94 A.3d 869, 875 (N.J. 2014); *see also Wang v. New Jersey State Police*, No. 18-11933, 2024 WL 3580671, at *16 (D.N.J. July 30, 2024) ("The NJCRA is interpreted nearly identically to § 1983 and claims under the NJCRA are generally coterminous with and subject to the same defenses and immunities as those brought under § 1983.") (citing *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443–44 (D.N.J. 2011)).

4

The City argues that Plaintiff's Amended Complaint fails to state a cause of action under § 1983 given her inability to identify a history of constitutional violations demonstrating custom, (D.E. 132 ("City Mov. Br.") at 16–18), and establish deliberate indifference and a causal link when the record demonstrates the City's substantial compliance with the 2016 Consent Decree, (*id.* at 22–31). This Court concludes that Plaintiff has not sufficiently stated a claim for municipal liability or failure to train and/or supervise.[6] Counts V and VIII are dismissed without prejudice to afford Plaintiff a final opportunity to amend her Complaint.

    i.   *Municipal Liability*[7]

In a § 1983 action, although a municipality cannot be held liable under a *respondeat superior* theory, it may be held liable where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). To survive a motion to dismiss, a plaintiff must not only allege a policy, practice, or custom violative of constitutional rights, but must also allege that said policy or custom "was the

---

[6] Count XIII of Plaintiff's Amended Complaint asserts a negligent retention and supervision claim against the City, separate and apart from her failure to train claim, but premised on similar conduct. (Amended Compl. ¶¶ 257–67.) However, Plaintiff's Opposition Brief fails to address this claim. As such, this Court deems Count XIII waived. *See Griglak v. CTX Mortg. Co.*, No. 09-5247, 2010 WL 1424023, at *3 (D.N.J. Apr. 8, 2010) ("The failure to respond to a substantive argument to dismiss a count, when a party otherwise files opposition, results in a waiver of that count."); *Alsaidi v. City of Paterson*, No. 22-6697, at *4 (dismissing § 1983 claims against defendant police department given the plaintiff's lack of opposition with prejudice).

[7] Relevant to her *Monell* claim, Plaintiff inserts facts not pled in her Amended Complaint in her Opposition Brief. Plaintiff references a 2019 shooting incident involving NPD Officer Jovanni Crespo and Newark Public Safety Transparency ("NPST") Data from 2018 to 2020 to support her contention that the NPD has a custom of tolerating the use of excessive force. (D.E. 136 at 15–19.) This Court declines to consider Plaintiff's theory of liability premised on the NPST Data, as the data was improperly attached as an exhibit to the Opposition Brief. *See Belichick*, 605 F.3d at 230; *Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is one thing to set forth theories in a brief; it is quite another to make proper allegations in a complaint."); *Frederico v. Home Depot*, 507 F.3d 188, 201–02 (3d Cir. 2007) (declining to consider "after-the-fact allegations" contained in the plaintiff's opposition brief when determining the sufficiency of her complaint under Rules 9(b) and 12(b)(6)). Similarly, because there is no reference to the 2019 incident involving another NPD Officer in either Plaintiff's Amended Complaint or the exhibits attached thereto, this Court does not consider the incident. *See Frederico*, 507 F.3d at 201–02.

'proximate cause' of his injuries." *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019). "Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)). Custom "can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990).

Plaintiff does not sufficiently allege that the City had an unconstitutional policy or custom to survive the City's Motion. Plaintiff repeatedly refers to the City's "policies, customs, and practices," but fails to identify either (a) an official policy and decisionmaker with final authority that implemented said policy or (b) a well-settled course of unconstitutional conduct by the City and the NPD that amounts to a custom. *See LaVerdure v. Cnty. of Montgomery*, 324 F.3d 123, 126 (3d Cir. 2003) ("To be a policy maker for § 1983 purposes, an official must have *final* policymaking authority.") (emphasis added); *Castro v. Delaware River Port Auth.*, No. 13-4467, 2014 WL 2916506, at *7 (D.N.J. June 26, 2014) (dismissing the plaintiff's § 1983 municipal liability claims where the plaintiff's complaint failed to identify a decisionmaker with final authority, a specific policy or custom, or a single incident apart from his own where the defendants were indifferent to people's constitutional rights as a result of the alleged policy or custom). For example, Plaintiff asserts that "responding to celebratory gunfire on New Years Eve with deadly force" amounts to a policy. (Amended Compl. ¶ 186.) Such a claim is unavailing; Plaintiff fails to plead facts supporting that the City "had knowledge of 'similar unlawful conduct in the past'" and failed to take action, leading to Mr. Dorsey's injuries. *See Roman*, 914 F.3d at 798; *cf. Fletcher v. O'Donnell*, 867 F.2d 791, 793 (3d Cir. 1989) ("A single incident by a lower level employee

6

acting under color of law . . . does not suffice to establish either an official policy or custom."). Plaintiff's Amended Complaint also fails to point to other comparable situations. *See Chey v. LaBruno*, 608 F. Supp. 3d 161, 184 (D.N.J. 2022) (holding the plaintiff's failure to identify analogous incidents in which the defendant police department's alleged practices resulted in injuries was detrimental to *Monell* claim).

As discussed in this Court's prior decision, Plaintiff's reliance on the 2014 Department of Justice ("DOJ") Report and 2016 Consent Decree is insufficient to demonstrate a plausible claim for relief given the lack of temporal proximity between the Consent Decree and the alleged unconstitutional police conduct. *See* Op. at 23. Plaintiff argues the Report of the Independent Monitor's First Audit of the NPD's use of force from a three-month period in 2019, (D.E. 132-7 at 56–67), demonstrates the City did not improve the deficiencies in reporting identified in the 2014 DOJ Report, such that "the NPD's culture and custom of tolerating excessive force continued into the years immediately preceding Dorsey's death." (D.E. 136 at 15–19.) Plaintiff's reliance on the latter is insufficient as Plaintiff's Amended Complaint fails to plead *how* this allegedly deficient reporting system resulted in Mr. Dorsey's death. *Cf. Watson v. Abington Twp.*, 478 F.3d 144, 156–57 (3d Cir. 2007) (affirming trial court's grant of summary judgment in favor of the defendants where the plaintiffs "produced no evidence relating to any decisionmaker" within the police department after 1993—which was five years preceding the conduct at issue—and the evidence they submitted was "too general to sustain their claims.") Additionally, Plaintiff merely states in a conclusory fashion that "there is a direct and affirmative link between the policies, custom, and practices and the violation of Mr. Dorsey's constitutional rights." (Amended Compl. ¶ 189.) *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

### ii.  *Failure to Train and Supervise*

"[I]n the absence of an unconstitutional policy, a municipality's failure to properly train its employees and officers can create an actionable violation of a party's constitutional rights under § 1983." *Reitz v. Cnty. of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997). A municipality's failure to train "amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). A plaintiff sufficiently pleads deliberate indifference by showing that "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Doe v. Luzerne Cnty.*, 660 F.3d 169, 180 (3d Cir. 2011) (quoting *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999)). The failure to train must not only reflect "a deliberate indifference to whether the alleged constitutional deprivations occurred," but must also have a causal nexus to the plaintiff's injuries. *Reitz*, 125 F.3d at 145.

Generally, plaintiffs demonstrate deliberate indifference for failure to train claims by showing of a pattern of similar constitutional violations. *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 223 (3d Cir. 2014). However, in "certain situations" where the need for training "can be said to be 'so obvious'" that failure to do so would amount to deliberate indifference, a court may find "single-incident" failure to train liability. *Id.* (quoting *Harris*, 489 U.S. at 390 n.10). "Liability in single-incident cases depends on '[t]he likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights.'" *Id.* at 223–24 (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997)).

In *Thomas*, the Third Circuit considered whether an injured inmate's claim under a single-incident liability theory could proceed against Cumberland County. *Id.* at 223–26. The inmate,

8

Lawrence Thomas, suffered injuries at the hands of other inmates while correctional officers stood nearby. *Id.* at 219–20. Thomas presented evidence of the prison's volatile nature, the frequency at which fights broke out, and how the prison's complete lack of de-escalation training fell outside national standards. *Id.* at 225–26. The court held that there was sufficient evidence as to whether the County acted with deliberate indifference, underscoring the frequency of the fights as relevant to whether Thomas's injury was a highly predictable consequence of the failure to provide de-escalation training. *Id.* at 225–26.

Here, Plaintiff's failure to train and supervise claim suffers from the same deficiency as her municipal liability claim. Plaintiff's Amended Complaint does not identify how the training or supervision of NPD Officers, including Defendant Simpkins, was deficient enough to constitute deliberate indifference. *See Cooper v. City of Paterson*, No. 23-3566, 2024 WL 1298917, at *6 (D.N.J. Mar. 27, 2024) (dismissing the plaintiff's *Monell* claim where "[t]he [c]omplaint does not allege any facts specifically identifying deficits with respect to training or supervision of [Paterson's] police officers as it pertains to use of force."); *Harriell v. Cuzzupe*, No. 21-20604, 2023 WL 2583468, at *3 (D.N.J. Mar. 21, 2023) (dismissing a plaintiff's complaint asserting a failure to train claim where the plaintiff failed to allege "whether there was a *specific* deficiency" in the defendant prison's training program) (emphasis added). Plaintiff argues for liability under a single-incident theory, but her Amended Complaint does not contain facts as to the likelihood of an incident like the one that took place here occurring again, which is key to the single-incident theory. *See Thomas*, 749 F.3d at 225–26.

C. **Common Law Tort Claims (Counts IX to XII, XIV, XV)**

9

Defendants move to dismiss all of Plaintiff's tort claims, arguing that she failed to provide the City and NPD with the requisite notice of claim and that neither equitable exception applies.[8] (Simpkins Mov. Br. at 11–12; D.E. 132-1 ("City Mov. Br.") at 32–34; D.E. 140 ("City Reply Br.") at 4–10.)  Plaintiff maintains that both the notice provided to the New Jersey Office of County Counsel's Newark location and a preservation letter sent to the NPD excuse her failure to comply with the NJTCA's notice of claim requirement under the doctrines of substantial compliance and equitable estoppel.  (D.E. 136 at 18–23; D.E. 137 at 18–23.)  This Court finds that Plaintiff failed to comply with the NJTCA's notice of claim requirement and that neither equitable exception applies.  It follows that Plaintiff's common law tort claims are dismissed with prejudice.

The NJTCA "is the statutory mechanism through which [the New Jersey] Legislature effected a waiver of sovereign immunity." *D.D. v. Univ. of Med. & Dentistry of N.J.*, 61 A.3d 906, 908 (N.J. 2013).  The statute "delineates both procedural and substantive requirements for bringing a tort claim against the State, public entities, and public employees," while espousing the principle that "[g]enerally, immunity for public entities is the rule and liability is the exception." *Nieves v. Off. of the Pub. Def.*, 230 A.3d 227, 232 (N.J. 2020) (alteration in original) (quoting *Fluehr v. City of Cape May*, 732 A.2d 1035, 1038–39 (N.J. 1999)); *see* N.J. Stat. Ann. § 59:2-1(a).

One of the NJTCA's procedural requirements is that the party seeking to bring "a claim relating to" a cause of action for death, injury, or damage to person or property file a notice of tort claim with a public agency or public employee "no[] later than the 90th day after accrual of the cause of action."  N.J. Stat. Ann. § 59:8-8.  Generally, failure to timely file a notice of claim—

---

[8] This Court finds that Plaintiff's Amended Complaint fails to aver that she filed a notice of tort claim.  *See Alvarado v. Johnson*, No. 19-18574, 2020 WL 3819211, at *2 (D.N.J. July 8, 2020) (dismissing the plaintiff's tort claims because "the pleadings in the complaint do not indicate that [the plaintiff] filed any such pre-suit notices required by the NJTCA").  The Amended Complaint also does not allege she filed a notice of late claim pursuant to N.J. Stat. Ann. § 59:8-9.

subject to the exception in N.J. Stat. Ann. § 59:8-9—permanently precludes the claimant from recovering against the public entity or public employee. *Id.* § (a).

The doctrines of substantial compliance and equitable estoppel, if applicable, may relieve a claimant from failure to comply with the NJTCA's notice of claim requirement. *D.D.*, 61 A.3d at 923; *Murray v. Brown*, 613 A.2d 502, 503 (N.J. Super. Ct. Law Div. 1991). The doctrine of substantial compliance "has been limited carefully to those situations in which the notice, although both timely and in writing," suffered from technical deficiencies. *D.D.*, 61 A.3d at 923 (collecting cases). The party asserting the doctrine must demonstrate: "(1) the lack of prejudice to the defending party; (2) a series of steps taken to comply with the statute involved"; (3) general compliance with the statute's purpose; "(4) a reasonable notice of petitioner's claim; and (5) a reasonable explanation why there was not strict compliance with the statute." *Panarello v. City of Vineland*, 160 F. Supp. 3d 734, 746 (D.N.J. 2016).

Plaintiff has not met the "heavy burden" of showing all the elements of the doctrine of substantial compliance. *See Galik v. Clara Maass Med. Ctr.*, 771 A.2d 1141, 1152 (N.J. 2001). Plaintiff did not provide the City with reasonable notice of her claim, nor does she proffer a reasonable explanation of why there was not strict compliance with the NJTCA. Plaintiff points to a March 25, 2021 letter sent by her attorney to the Office of County Counsel's Newark location. (D.E. 116-11, Ex. K). N.J. Stat. Ann. § 59:8-7 provides that "[a] claim for injury of damages arising under [the NJTCA] against a local public entity shall be filed with that entity." Plaintiff's letter and the accompanying Notice of Claim form attached are addressed to the Essex County Office of the County Counsel, not Defendant the City. Pursuant to N.J. Stat. Ann. § 59:8-7, Plaintiff cannot point to said letter as proof of reasonable notice to Defendants the City and NPD. *See Ingram v. Twp. of Deptford*, 911 F. Supp. 2d 289, 294–95 (D.N.J. 2012) (finding that the

11

plaintiff did not provide sufficient notice of tort claims to the defendant Township and Township Police Department by filing a probable cause statement for issuance of motor vehicle or criminal complaints); *Forcella v. City of Ocean City*, 70 F. Supp. 2d 512, 519 (D.N.J. 1999) (concluding that because for purposes of the NJTCA the Ocean City Police Department was a distinct entity from the Department of Public Safety, the plaintiff's failure to file a notice of claim with the Police Department was detrimental to her state law tort claims); *Platt v. Gonzalez*, No. 9-6136, 2011 WL 2413264, at *4 (D.N.J. June 9, 2011) (rejecting the plaintiff's argument that he substantially complied with the NJTCA's notice requirement by filing an Internal Affairs Complaint with the Atlantic City Police Department); *cf. Vargas v. Camden City Bd. of Educ.*, No. 5-778, 2006 WL 840393, at *5 (D.N.J. Mar. 28, 2006) (finding substantial compliance where the plaintiff sent a letter listing the tort claims she intended to bring directly to the defendant Board of Education).

Plaintiff asserts that the April 15, 2021 preservation letter her attorney sent to the Newark Police Division is proof that she provided the City with reasonable notice of her claim. Consideration of the preservation letter would be inappropriate as it is an exhibit attached to Plaintiff's moving brief. *See Belichick*, 605 F.3d at 230 (stating a district court must consider "only the complaint" and "exhibits attached to the complaint" when deciding a motion to dismiss). Even if this Court were to consider the preservation letter, the letter's contents do not sufficiently comport with the requirements of N.J. Stat. Ann. § 59:8-4. *See Poli v. Port Auth. of New York & New Jersey*, No. A-117-22, 2024 WL 959735, at *4–5 (N.J. Super. Ct. App. Div. Mar. 6, 2024) (finding plaintiff's "numerous communications with different individuals at different times" were inadequate to establish substantial compliance, even in light of an email triggering the litigation hold process by defendant, because "[t]he doctrine of substantial compliance requires much more than merely raising the possibility of some unspecified future litigation"). Here, the letter merely

12

requests preservation of evidence related to the incident and fails to identify allegedly responsible parties and include a request for damages. *See Morales v. New Jersey*, No. 21-11548, 2023 WL 5003891, at *7 (D.N.J. Aug. 3, 2023) (concluding the doctrine of substantial compliance did not apply where plaintiff's counsel sent a letter to the State defendants that did not identify the public entities or employees causing the injury or that the plaintiff intended to seek money damages).

Similarly, this Court finds that the doctrine of equitable estoppel does not apply. "[T]o establish equitable estoppel, plaintiffs must show that defendant engaged in conduct, either intentionally or under circumstances that induced reliance, and that plaintiffs acted or changed their position to their detriment." *Newark Cab Ass'n v. City of Newark*, 235 F. Supp. 3d 638, 648 (D.N.J. 2017) (quoting *Knorr v. Smeal*, 836 A.2d 794, 799 (N.J. 2003)). Courts do not frequently invoke the doctrine to relax the NJTCA's requirements, doing so only in "rare cases . . . when the defendant had misled the plaintiff about a material issue." *McDade v. Siazon*, 32 A.3d 1122, 1132 (N.J. 2011).

This is not one of those rare instances. Plaintiff herself recognizes that Defendants did not provide her with "any indication that any deficiencies existed as to a TCA Notice against" them. (D.E. 134 at 23.) Plaintiff's failure to identify "a promise or other conduct" by the City that would reasonably lead her to believe it was waiving the notice requirement is detrimental to her argument. *See McDade*, 32 A.3d at 1133 (finding no equitable estoppel where the record did not indicate "that plaintiffs relied to their detriment upon any representation or mission" by one of the defendants); *Newark Cab*, 235 F. Supp. 3d at 648 ("Plaintiffs['] failure to identify a promise or other conduct by the City that would reasonably induce reliance dooms their equitable estoppel claim.").

13

Given that neither the doctrine of substantial compliance nor of equitable estoppel is applicable, this Court dismisses Plaintiff's common law tort claims as against all Defendants.[9]

### IV. CONCLUSION

For the reasons stated above, Defendants' Motions are **GRANTED in part and DENIED in part** as set forth below:

1. Counts I to IV and VI as to Defendant Simpkins may go forward.

2. Counts V and VIII are dismissed without prejudice as to the City and the NPD.

3. Count VII is dismissed with prejudice as to all Defendants.

4. Counts IX to XV are dismissed with prejudice as to all Defendants.

Plaintiff shall be permitted to file one last amended complaint; no further opportunities shall be given.

                                                                               /s/ Susan D. Wigenton
                                              **SUSAN D. WIGENTON, U.S.D.J.**

Orig: Clerk
cc: Parties
     Michael A. Hammer, U.S.M.J.

---

[9] Because this Court finds that Plaintiff's common law tort claims cannot proceed, it declines to address Defendant Simpkins's argument that the tort claims against him should be dismissed because he is entitled to qualified immunity and they are barred by the common law sudden emergency doctrine.