**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TAMARA FONG, *as the Administratix and Administratix Ad Prosequendum of the ESTATE OF CARL DORSEY III, and Guardian Ad Litem to Minor Children G.O.D., J.D.D., and J.H.D.*,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF NEWARK, et al.,<br><br>Defendants. | Civil Action No. 22-7243 (SDW) (MAH)<br><br>**OPINION**<br><br>September 4, 2025 |

**WIGENTON**, District Judge.

Before this Court is Defendant the City of Newark's (the "City" or "Newark") Motion to Dismiss Plaintiff Tamara Fong's Second Amended Complaint (D.E. 164 ("SAC"))[1] pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) (D.E. 168 ("Mot.")).[2]  Jurisdiction is proper pursuant to 28 U.S.C. § 1331 and § 1367(a).  Venue is proper pursuant to 28 U.S.C. § 1391.  This opinion is issued without oral argument pursuant to Rule 78 and Local Civil Rule 78.1.  For the reasons stated herein, the Motion is **GRANTED**.

---

[1] Citations to "D.E." refer to docket entries in the Court's Electronic Case Filing System for this matter and any internal citations contained therein.

[2] Consistent with this Court's December 10, 2024 opinion and for the reasons stated therein, this Court's references to the City encompass both the City and Newark Police Department, unless otherwise stated. *See Fong v. City of Newark*, No. 22-7243, 2024 WL 5074763, at *1 (D.N.J. Dec. 10, 2024) ("*Fong II*").

## I.    **FACTUAL AND PROCEDURAL BACKGROUND**

### A.  Facts

On New Year's Eve in 2020, Detectives Rod Simpkins, Carlos Alvarado, and Ricardo Reillo—all members of the Newark Police Department's Criminal Intelligence Unit—were on shift from approximately 7:00 p.m. on December 31, 2020 to 7:00 a.m. on January 1, 2021. (SAC ¶¶ 25–26, 28.) At around midnight on January 1, 2021, the officers—who had been assigned to proactively patrol "high crime areas" in Newark—were undercover and traveling eastbound toward South Eleventh Street in an unmarked Chevrolet Trailblazer when Detective Alvarado heard "what he believed to be the sound of three gunshots." (*Id.* ¶¶ 16, 25, 29, 34, 49.) Detective Alvarado, who was driving the Trailblazer, turned northbound on South Eleventh Street, proceeded at a high rate of speed, eventually stopping mid-block across from 694 South Eleventh Street. (*Id.* ¶ 39.)

At that point, Detective Simpkins—who was in the rear passenger seat of the Trailblazer—exited the vehicle with his handgun drawn and as he rushed to the front of the car, he bumped into Mr. Dorsey. (*Id.* ¶¶ 30, 42, 44, 46.) "Upon bumping into Dorsey, Detective Simpkins spun around, aimed his gun at Dorsey's chest, and shot [Dorsey] as [he]" was attempting to cross the street. (*Id.* ¶ 47.) While he was crossing the street, Mr. Dorsey's hands were visible and empty. (*Id.* ¶ 45.) At no time was Mr. Dorsey carrying or brandishing a weapon. (*Id.* ¶ 63.) Approximately three seconds elapsed from the time Detective Simpkins exited the vehicle to the time he shot Mr. Dorsey, with a nearby residence capturing video footage of the incident which occurred at around 12:05 a.m. (*Id.* ¶ 48.)

In the minutes following his shooting, Mr. Dorsey laid on the sidewalk bleeding and groaning, while Detective Simpkins and other law enforcement officers repeatedly searched

Dorsey's person, as well as the surrounding area, but did not provide medical care. (*Id.* ¶¶ 67–68, 70–72.)  Mr. Dorsey was ultimately transported to University Hospital in Newark, where he was pronounced dead at approximately 1:37 a.m. (*Id.* ¶ 75.)

### A.  Procedural History

Plaintiff Tamara Fong—the administratrix and administratrix *ad prosequendum* of Mr. Dorsey's estate—initiated this action on December 13, 2022. (D.E. 1.)  This Court has now addressed and granted in part and denied in part the City and Detective Simpkins's motions to dismiss Plaintiff's case twice. (D.E. 79 & 162.)  Following this Court's last opinion—which gave Plaintiff one last opportunity to amend her pleadings—Plaintiff filed a Second Amended Complaint on January 9, 2025. (D.E. 164.)  Relevant to this Motion, the Second Amended Complaint asserts a claim for a custom violative of 42 U.S.C. § 1983 under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690 (1978) (Count V) as well as for failure to train and supervise (Count VI) against the City. (SAC at 31–34.)  The City moved to dismiss Plaintiff's Second Amended Complaint on February 6, 2025; the parties timely completed briefing. (D.E. 168, 170, 177.)

## II.  <u>LEGAL STANDARD</u>

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).  The pleading should "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

When deciding a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief may be granted, federal courts "must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff," and determine "whether [the]

plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010). The analysis involves a two-step approach. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). First, the court parses between the factual and legal elements of a claim, treating "all of the complaint's well-pleaded facts as true," but disregarding any legal conclusions. *Id.*; *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Second, the court considers "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

When a plaintiff pleads factual content that enables the court to draw "the reasonable inference that the defendant is liable for the misconduct alleged," a claim has facial plausibility. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678). Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[] that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id.* The court considers "only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Belichick*, 605 F.3d at 230 (citation omitted).

## III.    <u>DISCUSSION</u>

The City asks this Court to dismiss Plaintiff's § 1983 claims. (D.E. 168-1 ("Mov. Br.") at 13.) Section 1983 provides a means to redress violations of federal law committed by state actors.

*See Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).  To make a prima facie case for a § 1983 violation, a plaintiff must "plead a deprivation of a constitutional right and that the constitutional deprivation was caused by a person acting under the color of state law."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008); 42 U.S.C. § 1983.  Municipalities can be held liable under § 1983, but not on a *respondeat superior* theory of liability.  *Monell*, 436 U.S. at 691.  "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  *Id.* at 694.

### A.  Municipal Liability

In her Second Amended Complaint, Plaintiff pleads that the NPD has a culture and custom of "tolerating officers using excessive force and discharging their duty pistols when no deadly force [is] threatened."  (SAC ¶ 131.)  Plaintiff asks this Court to consider the ten years from the time the ACLU petitioned the Department of Justice ("DOJ") to investigate the City through the time of Mr. Dorsey's death in 2021 in the aggregate and "incorporates specific incidents, statistics, and findings from 2021 dating back ten-plus years," to support her claim that at the time of Mr. Dorsey's killing, the City had a custom and practice of using excessive force which led to his death.  (D.E. 170 ("Opp. Br.") at 7, 18–20.)

The City argues Plaintiff fails to allege "the existence of a City custom of tolerating excessive force" leading to the Decedent's death.  (Mov. Br. at 12.)  The City challenges Plaintiff's reliance on use of force statistics from 2018 through 2020, the deficiencies in use of force reports noted by the Independent Monitor, and four instances involving other NPD officers' use of force occurring between 2019 and 2021 to support her *Monell* claim.  (*Id.* at 14–15.)  It contends that

these factual circumstances, taken individually or collectively, do not establish a custom. (*Id.* at 14.)

In response to Plaintiff's allegation that City officers discharge their firearms "at a rate disproportionate to the number of instances where deadly force was threatened," (SAC ¶¶ 126–30), the City underscores that officers are permitted to use force not just when deadly force is threatened, but also when confronted with a threat of serious bodily harm, (Mov. Br. at 15–16). Lastly, the City argues that Plaintiff's *Monell* claim fails because she does not set out how the lack of stringent reporting requirements led to Mr. Dorsey's death or how stricter enforcement of reporting requirements would have prevented it. (Mov. Br. at 17.)

To hold a municipality liable under § 1983, a plaintiff "must demonstrate that the violation of rights was caused by the municipality's policy or custom." *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014) (citing *Monell*, 436 U.S. at 690–91). The policy or custom must either violate the Constitution itself or be the "'moving force' behind the constitutional tort" of the municipality's employee. *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1027 (3d Cir. 1991) (citing *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981)). Custom "can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990). Custom may also be established by proof of knowledge and acquiescence. *Fletcher v. O'Donnell*, 867 F.2d 791, 793 (3d Cir. 1989).

Plaintiff relies on and incorporates portions of several relevant documents into her Second Amended Complaint to support her theory that at the time of Dorsey's death in 2021, the City had yet to correct its custom of tolerating officers' excessive use of force. As previously noted in this Court's past decisions, the 2014 Department of Justice ("DOJ") Report and 2016 Consent Decree

6

lack temporal proximity to the incident in this case, and thus this Court declines to consider them. *Fong II*, 2024 WL 5074763 at *3. Moreover, the remaining documents Plaintiff cites to undermine her arguments. For example, Plaintiff claims that in 2021 "the City had still not undergone a full use of force audit as required by the [I]ndependent Monitor." (Opp. Br. at 10.) Yet in June 2021, the Independent Monitor published its First Audit of the City's and the NPD's use of force.[3] (D.E. 164-11, Ex. L ("Force Audit Report") at 2.)

The Force Audit Report undermines Plaintiff's Second Amended Complaint and arguments in several ways. First, the Monitoring Team responsible for auditing the City's use of force did not review any use of force incidents involving "an officer's use of firearms on a subject." (*Id.* at 6.) *Cf. Simpson v. Ferry*, 202 F. Supp. 3d 444, 449–50 (E.D. Pa. 2016) (limiting consideration of the Department of Justice's report on the Philadelphia Police Department's use of force tactics to only those portions discussing excessive force after finding many of the report's findings "not entirely relevant to the alleged municipal custom and training deficiencies at issue" in the case). Second, the Force Audit Report shows the "NPD's new or revised use of force policies embod[ied] each of the Consent Decree's requirements" in 2017, 2018, and through the Audit Period. (Force Audit Report at 5.) Third, although the Monitoring Team found the NPD non-compliant in its use of force reporting, it also found the "NPD's rate of substantive incident compliance, the most consequential indicator of individual officer performance, to be commendable by any of the compliance measures used for that purpose in the audit," as the rate was 2.1 percentage points shy of the ninety-five percent requirement. (*Id.* at 13.) The allegation

---

[3] The Monitoring Team responsible for producing the Force Audit Report "reviewed NPD's police activities and records for a three-month period, specifically, from July 1, 2019, through September 30, 2019 (the 'Audit Period')." (Force Audit Report at 4.)

that the lack of reporting and documentation was the product of an ongoing custom of tolerance of excessive force is not only an unreasonable, but also a conclusory, inference.

Plaintiff also argues that a failure to report and document incidents involving excessive force is "in part a result of the monitoring and the continuation of the ongoing custom," such that "[h]ad the use of force been reasonable[,] the appropriate documentation would have been completed." (Opp. Br. at 19.) This argument engages in a *post hoc ergo propter hoc* logical fallacy. *See Takiedine v. 7-Eleven, Inc.*, No. 17-4518, 2022 WL 837181, at *5 (E.D. Pa. Mar. 18, 2022) (explaining that under the *post hoc ergo propter* fallacy "a party asserts that because Y happened subsequent to X, therefore, X *caused* Y). As such, Plaintiff has not adequately pled an unconstitutional custom. *See Connelly*, 809 F.3d at 786.

Even assuming Plaintiff had adequately pled an unconstitutional custom, this Court finds Plaintiff's *Monell* claim fails because the Second Amended Complaint does not put the City on notice as to *how* the alleged custom led to Mr. Dorsey's death—the causation element. A plaintiff must not only prove the "mere existence of an unlawful policy or custom," but also "bears the additional burden of proving that the municipal practice was the proximate cause of the injuries suffered" by demonstrating a "'plausible nexus' or 'affirmative link' between the municipality's custom and the specific deprivation of constitutional rights at issue." *Bielevicz*, 915 F.2d at 850 (citing *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984)). For example, where a municipality is on notice as to its constitutionally deficient custom or procedure, courts in this Circuit have found a causal link between the uncorrected custom or usage and a specific violation, reasoning it is "logical to assume that continued official tolerance of repeated misconduct facilitates similar unlawful actions in the future." *Id.* at 851.

Here, it is certainly the case that the City was on notice as to its constitutionally deficient customs and/or procedures by the time of the DOJ's publication of its 2014 Report. However, as discussed above, according to the Independent Monitor's 2021 Force Audit Report, the City's use of force policies were in compliance with the 2016 Consent Decree's requirements from 2017 through 2019. Additionally, the Independent Monitor's Sixteenth Quarterly Report which reflected developments as of December 31, 2020, indicated that from 2018 through 2020 the NPD showed "substantial improvement" with regards to its imposition of discipline on NPD officers, "including [in] disciplining officers for excessive force, as evidenced by the Monitoring Team's review of aggregate data." (D.E. 225-1 at 3, 8–10.) Thus, it does not follow that the City "failed to take precautions against future violations, and that this failure, at least in part, led to" Mr. Dorsey's injury. *See Bielevicz*, 915 F.2d at 851. The Independent Monitor's findings weaken the causal link, rendering it too tenuous to find Plaintiff has pled a plausible claim for relief. Accordingly, Count V of the Second Amended Complaint is dismissed.

### B. Failure to Train and Supervise

Plaintiff alleges that the NPD failed to adequately train its officers on the proper plain clothes procedures and on appropriate use of force—with officers only receiving a single use of force training post-Consent Decree in 2018. (SAC ¶¶ 165–67, 181.) Plaintiff avers that had Defendant Detective Simpkins received adequate training, he would not have violated the 2018 Use of Force Policy and the "Plain Cloth[e]s Officer Recognition" Policy. (*Id.* ¶¶ 168–70, 173, 188–89.) Plaintiff maintains that the NPD's failure to train officers resulted in Mr. Dorsey's death. (*Id.* ¶¶ 186, 192.)

The City contends Plaintiff fails to adequately plead a failure to train and supervise claim. (Mov. Br. at 17.) The City argues that it has made a good faith effort to improve its policies and

trainings—as evidenced by the Independent Monitor's Sixteenth Quarterly Report's finding that the City achieved one-hundred percent administrative compliance in its use of force training— such that Plaintiff does not plead causation. (*Id.* at 20–22.) According to the City, Plaintiff draws the impermissible inference that there was inadequate plain clothes training on materially inaccurate allegations as to what the policy requires. (*Id.* at 20–21.)

To plausibly plead a failure to train and/or supervise claim, a plaintiff must show that a policymaker's failure to train, supervise, and/or discipline municipal law enforcement "amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). A plaintiff sufficiently pleads deliberate indifference by showing that "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Doe v. Luzerne Cnty.*, 660 F.3d 169, 180 (3d Cir. 2011). The failure to train must not only reflect "a deliberate indifference to whether the alleged constitutional deprivations occurred," but must also have a causal nexus to the plaintiff's injuries. *Reitz v. Cnty. of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997).

Plaintiff's Second Amended Complaint fails to plead what additional training would have done to avoid the shooting. To the extent Plaintiff alleges Defendant Detective Simpkins did not receive excessive force training past 2018, (SAC ¶¶ 248–49), Plaintiff's Second Amended Complaint does not adequately plead how any additional training would have avoided the shooting. Unlike in *Estate of Roman v. City of Newark*, where the Third Circuit reviewed the 2016 Consent Decree and found temporal proximity to the 2014 DOJ Report, this Court has a broader picture before it. 914 F.3d 789, 793–94, 799 (3d Cir. 2019). Here, the record demonstrates that

the "Monitoring Team . . . determined that NPD ha[d] 'trained all relevant personnel as necessary to fulfill their responsibilities'" pertaining to use of force for the audit period of March 1, 2019 to December 31, 2019.  (D.E. 225-1 at 62–63.)  The Third Circuit's inference that it could fairly infer "that the consent decree was necessary because of Department-wide failures, not because one officer was last trained in 1995" at the pleading stage, 914 F.3d at 800, is not one that is easily or plausibly transferrable to the instant matter, notwithstanding that the City is a defendant in both cases, given the lapse in the causation chain.  Plaintiff would have this Court take a truncated and partial view of the timeline of events relevant to the City's conduct.  Yet this Court cannot ignore the City's efforts to comply with and implement the Consent Decree's requirements.  Plaintiff's claims are undermined by the very documents to which she cites.  Count VI is therefore dismissed.

### C.  Punitive Damages

Plaintiff's Second Amended Complaint includes a request for punitive damages as a form of relief.  (SAC at 35.)  Punitive damages are not permissible, unless expressly authorized by statute.  *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 260 n.21 (1981).  Accordingly, Plaintiff's demand is barred.

## IV.    <u>CONCLUSION</u>

For the reasons stated above, the City's Motion is **GRANTED**.  This Court affords no further opportunities to amend the Complaint, consistent with its prior decision.  *See Fong II*, 2024 WL 5074763 at *6 ("Plaintiff shall be permitted to file one last amended complaint; no further opportunities shall be given.").  An appropriate order follows.


　　　　　　　　　　　　　　 /s/ Susan D. Wigenton
　　　　　　　　　　　　　**SUSAN D. WIGENTON, U.S.D.J.**

Orig:   Clerk
cc:     Parties
        Michael A. Hammer, U.S.M.J.